1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                       DISTRICT OF OREGON

9                       PORTLAND DIVISION

10

11

12  ELWOOD STAFFING SERVICES, INC.,              No. 3:14-cv-01270-HU
    an Indiana Corporation,
13                                                      **OPINION AND**
            Plaintiff,                                         **ORDER**
14
         v.
15
    KGS2 GROUP, LLC, an Oregon
16  Limited Liability Company, d/b/a
    EXPRESS EMPLOYMENT PROFESSIONALS;
17  THE STOLLER GROUP, INC., an
    Oregon Corporation; and SUSAN
18  KONOPSKI, individually and in her
    capacity as an agent and officer of
19  EXPRESS EMPLOYMENT PROFESSIONALS, INC.,

20          Defendants.

21  ─────────────────────────────────────────

22                          COUNSEL

23  Krishna  Balasubramani  and  Sarah  B.  Ewing,  Sather,  Byerly  &
    Holloway,  LLP,  Portland,  Oregon,  for  Plaintiff  Elwood  Staffing
24  Services, Inc.

25  Lucas W. Reese, Garrett Hemann Robertson P.C., Salem, Oregon, for
    Defendants KGS2 Group, LLC, d/b/a Express Employment Professionals,
26  and The Stoller Group, Inc.

27  Zachary J. Dablow, Zachary Dablow, Attorney at Law, Salem, Oregon,
    for Defendant Susan Konopski.
28

    Page 1 - OPINION AND ORDER

HUBEL, Magistrate Judge:

Plaintiff Elwood Staffing Services, Inc. ("Elwood") brought this diversity action against Defendants KGS2 Group, LLC ("KGS2"), The Stoller Group, Inc. ("Stoller") and Susan Konopski ("Konopski") (collectively, "Defendants") on August 6, 2014, alleging claims for injunctive relief, breach of contract, promissory estoppel, intentional interference with economic relations, breach of confidential relationship, and misappropriation of trade secrets. Plaintiff now moves, pursuant to Federal Rule of Civil Procedure ("Rule") 65(a) and (b), for a temporary restraining order and an order to show cause why a preliminary injunction should not issue in this proceeding. For the reasons explained more fully below, Elwood's motion (Docket No. 7) for a temporary restraining order and order to show cause why a preliminary injunction should not issue is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

Elwood is an Indiana Corporation that provides "temporary and direct staffing services to a variety of business client companies . . . , primarily in the industrial, clerical, professional, and technical industries." (Compl. ¶ 7.) On February 15, 2013, Elwood acquired non-party SOS Staffing Services, Inc. ("SOS Staffing") through a stock purchase. (Compl. ¶ 9; Basile Decl. ¶ 1.) SOS Staffing purportedly assigned its employees' non-competition and non-solicitations agreements to Elwood as part of the acquisition, including the agreement Konopski signed on May 24, 2006, at the inception of her employment with SOS Staffing. (Compl. ¶¶ 8-9; Basile Decl. ¶ 1.)

The agreement signed by Konopski on May 24, 2006, provides in relevant part:

> [T]o protect our proprietary, confidential and/or trade secret information, for the one-year period following the termination of your employment with us, for any reason or for cause, whether voluntary or involuntary, you agree:
>
> a. either directly or indirectly, in person or through a third party or associate, not to call on, solicit or otherwise deal with any of our customers located within 60 miles of your territory, branch, or specific location at which you worked for us, or any other of our customers if you dealt with such customer while employed by us;
>
> b. either directly or indirectly, in person or through a third party or associate, not to either solicit for employment, employ in anyway or cause any employee to be hired at your subsequent competing employer any of our employees (including, without limitation, temporary employees and/or staff employees) who were employed by us during the period of time you were employed by us; and
>
> c. in order to further protect our confidential, proprietary and/or trade secret information, and as a condition of employment, continued employment with us and access to our proprietary and/or confidential information and trade secrets, not to work for, consult with or be employed by, directly or indirectly, any of our competitors at any location within 60 miles of your territory, branch, or specific location at which you worked while employed by us.
>
> You agree that the term of this non-competition provision is reasonable and that the limited geographic scope of this non-competition provision does not preclude you from working in your given field, and you represent that you can seek employment with our competitors at a location outside of the limited geographic limitations of this non-competition provision. You agree that each of the foregoing restrictive covenants are reasonable and will not result in any undue hardship to you. You also agree that the confidential, proprietary and/or trade secret information obtained while working for us or our affiliated companies will not be used in any way to the detriment of our business, reputation or good standing at any time in the future.

(Basile Decl. Ex. A at 1–2.) Notably, the agreement purports to be legally binding on the employee, SOS Staffing, and SOS Staffing's

Page 3 – OPINION AND ORDER

1    "subsidiaries or affiliates," but it is silent with respect to

2    assignees.  (Basile Decl. Ex. A at 1.)

3        When Elwood acquired SOS Staffing in February 2013, Konopski

4    "received no pay increase, increase of duties, changes to [her]

5    supervisors, or other changes or interruptions in [her]

6    employment[.]"  (Konopski Decl. ¶ 2.)  Nor did Konopski complete

7    any new hire paperwork.  (Basile Decl. ¶ 1.)  At some unspecified

8    time in March of 2013, Konopski was instructed to place a signature

9    block in all outgoing emails that referred to her as an employee of

10   "SOS Employment Group[,] *An Elwood Staffing Company*."  (Konopski

11   Decl. ¶ 4) (emphasis added).  Though "SOS Staffing was and

12   continues, to date, to be a wholly owned subsidiary of Elwood with

13   continued operations," Elwood did not receive a certificate of

14   authority to conduct business in Oregon until December 18, 2013.[1]

15   (Kasten Decl. ¶¶ 4, 9.)

16       Five days later, on December 23, 2013, Konopski received an

17   email from Elwood's employee relations manager, Fran Matragos

18   ("Matragos"), that stated:

19       As you are aware, the employment of all SOS Staffing
20       Services, Inc. staff employees will be transferred to
         Elwood Staffing Services, Inc. effective January 1, 2014.

21       In order to accomplish this transition all current SOS
22       staff employees are required to sign the attached form,
         entitled: Employees Acknowledgment of Employee Handbook;
23       Acknowledgment and Consent of Change of Employer; and
         Assignment of Confidentiality and Non-Solicitation and/or
         Non-Competition Agreement.
24
25           . . . .

26   ─────────────────
         [1] The parties do not dispute that, at all material times,
27   Konopski was an Oregon resident whose "[c]ustomers covered
     territory from Downtown Portland, to Forest Grove, to Wilsonville,
28   Oregon."  (Compl. ¶¶ 2, 11.)

Page 4 - OPINION AND ORDER

> The agreement must be signed and returned by email . . .
> or fax . . . no later than Thursday, December 26, 2013.
>
> Failure to submit this promptly may interfere with the
> transfer of your employment from SOS to Elwood. If you
> have questions please contact Human Resources.

(Matragos Decl. Ex. A at 1-2; Konopski Decl. ¶ 5.)

The form attached to Matragos' email, which was ultimately signed by Konopski on January 2, 2014, stated:

> I . . . hereby acknowledge that effective January 1,
> 2014, I will be an employee of Elwood Staffing Services,
> Inc. . . . I hereby consent to the assignment of my
> employment from SOS Staffing Services, Inc. . . . to
> Elwood Staffing. I understand and agree all compensation
> paid to me after January 1, 2014, even if earned while
> employed by SOS, will be paid by Elwood Staffing.
>
> I hereby consent to the assignment from SOS to Elwood
> Staffing of the following agreement: Agreement Regarding
> Non-Competition & Non-Solicitation of Customers and
> Employees entered into between me and SOS at the time I
> was employed by SOS or during the course of my employment
> with SOS.

(Basile Decl. Ex. B at 1.) Konopski maintains that she was "not provided any type of job offer, written or otherwise, prior to being presented" with the assignment quoted above. (Konopski Decl. ¶ 5.)

Also in early January 2014, "all former SOS Staffing employees were directed to use a signature block that referred only to Elwood." (Kasten Decl. ¶ 7.) A little over six months later, on June 18, 2014, Konopski sent an email to her regional manager at Elwood, Tracie Basile ("Basile"), indicating that she was "ready to take that next step into management and . . . didn't see any opportunities here in the Portland area with Elwood," that she had been presented "a management offer" that would increase her base salary by $20,000, and that she was giving her two weeks notice.

Page 5 - OPINION AND ORDER

1  (Basile Decl. ¶ 6, Ex. C at 1.)  Basile then called Konopski, who
2  explained that she was taking the branch manager position with
3  Express Employment Professionals ("Express").[2]  (Basile Decl. ¶ 6.)

4      Later that same day, June 18, 2014, Konopski sent Elwood's
5  human resources department an email attaching a letter of
6  resignation and a proposed waiver of "the non-competition portion
7  of our now-terminated employment agreement," in exchange for
8  Konopski agreeing to adhere to the non-solicitation and
9  confidentially provisions.  (Compl. ¶ 16, Ex. D at 1.)  Konopski
10 began working for Express on or about July 1, 2014, even though
11 Elwood never signed or agreed to Konopski's proposed waiver of the
12 non-competition provision.  (Compl. ¶ 18; Basile Decl. ¶ 18.)  On
13 the basis of the foregoing, Elwood filed the present action against
14 Defendants on August 6, 2014.  Elwood's motion for a temporary
15 restraining order and order to show cause why a preliminary
16 injunction should not issue followed on September 16, 2014.

17                        **II. LEGAL STANDARD**

18      "A party seeking a temporary restraining order must make the
19 fourfold showing necessary for the issuance of a preliminary
20 injunction." *Williamson v. Oregon*, No. 3:14-cv-00591-PK, 2014 WL
21 2803017, at *1 (D. Or. June 19, 2014) (citing *Stuhlbarg Int'l Sales*
22 *Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001));
23 *see also Alexander v. Williams*, No. 6:11-cv-06215-PK, 2012 WL
24 3527042, at *1 n.1 (D. Or. Aug. 14, 2012) ("[T]he standards for

25

26
_____

27     [2] Express is an assumed business name for KGS2, an Oregon
   limited liability company. (Compl. ¶ 3.) Stoller, a closely held
28 corporation with its principal place of business located in
   Tualatin, Oregon, is a managing member of KGS2. (Compl. ¶ 4.)

Page 6 - OPINION AND ORDER

issuance of a temporary restraining order are at least as exacting as those for a preliminary injunction.") (citation omitted). Specifically, the plaintiff "must show 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Williamson*, 2014 WL 2803017, at *1 (quoting *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009)).

### III. DISCUSSION

For the purposes of the pending motion, the parties have agreed to limit the scope of their dispute to the enforceability of Konopski's non-competition agreement. Resolution of the parties' dispute requires this Court to address the legal ramifications of Elwood's acquisition of SOS Staffing, as well as the potential validity or invalidity of any purported assignments of Konopski's non-competition agreement.

**A.    The Stock Purchase Agreement**

To invoke the requirements of the post-January 1, 2008 version of Oregon Revised Statute ("ORS") 653.295, the statute that establishes the requirements for a valid non-competition agreement in Oregon, Konopski argues that her initial employment with Elwood began on February 15, 2013, when the stock purchase agreement between Elwood and SOS Staffing officially closed.[3]  According to

---

[3] "The Oregon legislature amended the [ORS 653.295] in 2007 to expressly exclude from the statute's scope a 'covenant not to . . . solicit or transact business with customers of the employer.'" *Moreland v. World Commc'n Ctr., Inc.*, No. Civ. 09-913-AC, 2010 WL 4237302, at *2 (D. Or. Sept. 17, 2010) (citation

1    Konopski, "[p]articularly dispositive of this argument is that on

2    or about March 1, 2013, [she] was made to alter her public

3    signatures on all outgoing emails to reference that she now worked

4    for Elwood." (Def. Konopski's Opp'n at 7.)

5        The Court is not convinced that Konopski's employment with

6    Elwood began on February 15, 2013. "[T]here is a strong

7    presumption that a parent company is not the employer of its

8    subsidiary's employees." *City of Los Angeles v. Sand Pedro Boat*

9    *Works*, 635 F.3d 440, 453 (9th Cir. 2011) (citation omitted); *Frank*

10   *v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993) (stating

11   that there is "a strong presumption that a parent company is not

12   the employer of its subsidiary's employees, and the courts have

13   found otherwise only in extraordinary circumstances.").

14       The record in this case indicates that, as of February 15,

15   2013, "SOS Staffing was and continues, to date, to be a wholly

16   owned subsidiary of Elwood with continued operations." (Kasten

17   Decl. ¶ 4.)  Having Konopski alter her electronic signature in

18   March 2013 to state that she was an employee of "SOS Employment

19   Group[,] *An Elwood Staffing Company*," reflects nothing more than a

20   parent-subsidiary relationship between SOS Staffing and Elwood, not

21   an employee-employer relationship between Konopski and Elwood.  The

22   Court therefore declines to conclude that Konopski's initial

23   employment with Elwood began on February 15, 2013.

24   ///

25   ///

26

27   omitted).  This exclusion applies "only to agreements 'entered into

28   on or after' January 1, 2008, the effective date of the 2007 Act."
     *Id*.

Page 8 - OPINION AND ORDER

**B.    Assignability**

Next, the parties dispute whether the non-competition agreement executed by Konopski on May 24, 2006, was even assignable.  Citing *Perthou v. Stewart*, 243 F. Supp. 655, 659 (D. Or. 1965), Konopski maintains that, "[a]bsent a clause indicating that the parties to an original non-compete agreement intended the terms to inure to the benefit of their successors, such agreements are not assignable under Oregon law." (Def. Konopski's Opp'n at 4.)  Konopski thus argues that the lack of an assignment clause in the non-competition agreement renders it unenforceable by Elwood.

In *Perthou*, the federal district court addressed, among other things, whether non-competition covenants were assignable. *Perthou*, 243 F. Supp. at 658.  The district court essentially adopted the view that personal service contracts cannot be assigned, regardless of whether "the assignment be to a corporation or partnership with a changed membership which carries on a business substantially in the same way in which it was previously operated." *Id*. at 659.  As the district court went on to explain, "[t]he fact that a person may have confidence in the character and personality of one employer does not mean that the employee would be willing to suffer a restraint on his freedom for the benefit of a stranger to the original undertaking." *Id*.

Seven years later, in *Mail-Well Envelope Co. v. Saley*, 262 Or. 143 (1972), the Oregon Supreme Court was presented with the question of whether an employment agreement, including its non-competition provisions, was assignable. *Id*. at 149.  The Oregon Supreme Court began by noting that there were two competing rules: the first being that "'[r]ights which would not otherwise be

Page 9 - OPINION AND ORDER

capable of assignment . . . [m]ay be assigned or delegated [i]f the contract so provides, or if in the absence of such a provision the other party consents,'" *id*. at 149-50 (quoting 3 Williston, *Contracts* § 423 3d ed. 1960)), and the second being that "noncompetition provisions in employment contracts which are otherwise valid are assignable even in the absence of provisions permitting the assignment of such contracts," *id.* at 150 (citing 4 Corbin, *Contracts* § 885 (1951)).   The Oregon Supreme Court then held that, "[r]egardless of whether the proper rule should be as stated by Williston or by Corbin, the employment contract in this case, included a provision permitting assignment and was thus assignable under either version of that rule."   *Id.*

The rule stated by Williston seems to be the more employee-friendly of the two rules discussed by the Oregon Supreme Court in *Mail-Well*, as it essentially requires the employee to assent to the written terms of an express assignment provision, or, alternatively, to provide his consent in the absence of such a provision.[4]   Although the Oregon Supreme Court declined to expressly adopt the rule stated by Williston or by Corbin, the Court will apply the Williston rule here because it was clearly one

---

[4] In *Epiq Class Action & Claims Solutions, Inc. v. Prutsman*, No. CV 09-1185-MO, 2009 WL 3923413 (D. Or. Nov. 13, 2009), Judge Mosman stated: "When read together, *Perthou* and *Mail-Well* suggest that a personal service contract prohibiting competition against a specific employer is only assignable if the employee is on notice, at the time the employee signs the agreement, that he or she would also be prohibited from competing with a subsequent assignee." *Id.* at *3 n.2.   This Court's combined reading of *Perthou* and *Mail-Well* is not as restrictive as that announced in *Epiq Class*.   This Court also places more emphasis on *Mail Well* than on the federal district court's decision in *Perthou*, because the Oregon Supreme Court ultimately determines Oregon state law.

Page 10 - OPINION AND ORDER

1  of two options entertained by the Oregon Supreme Court, and because
2  it more adequately protects employees from surprise and oppressive
3  tactics.  *See generally Epiq Class*, 2009 WL 3923423, at *3
4  (discussing the public policy considerations behind Oregon's
5  treatment of noncompetition agreements).

6      The first purported assignment of Konopski's non-competition
7  agreement, according to the complaint filed by Elwood, occurred on
8  or about February 15, 2013, when the Stock Purchase Agreement
9  officially closed: "On or about February 15, 2013, Elwood, through
10 a stock purchase, acquired SOS Staffing stock. SOS Staffing
11 assigned its employees' Non-Competition and Non-Solicitation
12 Agreements to Elwood. No new hire paperwork was completed." (Compl.
13 ¶ 9.)  Konopski's non-competition agreement did not include a
14 provision permitting assignment and SOS Staffing had not yet
15 attempted to obtain Konopski's consent.  Any unilateral assignment
16 by SOS Staffing to Elwood in February 2013 was thus invalid.  The
17 Court is satisfied that this invalid assignment had no legal effect
18 on Konopski's obligations to SOS Staffing who, as discussed above,
19 remained Konopski's employer post-closure of the Stock Purchase
20 Agreement.  *See, e.g., Williams v. One West Bank, FSB*, No.
21 12-01695, 2013 WL 1390038, at *5 (C.D. Cal. Apr. 4, 2013) (holding,
22 in a different context, that an invalid assignment of a trust deed
23 had no effect on the borrower's responsibilities).

24     The second attempt to assign Konopski's non-competition
25 agreement began with an email on December 23, 2013—five days after
26 Elwood received a certificate of authority to conduct business in
27 Oregon.  That email informed Konopski that she had until the day
28 after Christmas to execute a form consenting to the assignment of

Page 11 - OPINION AND ORDER

1    her non-competition agreement to Elwood, and that the failure to
2    promptly do so "may interfere with the transfer of [her]
3    employment." (Matragos Decl. Ex. A at 1-2; Konopski Decl. ¶ 5.)
4    After "express[ing] [her] reservations at signing the document,"
5    Konopski ultimately signed the consent form on January 2, 2014,
6    which purported to assign her non-competition agreement to Elwood.
7    (Konopski Decl. ¶ 6; Basile Decl. Ex. B at 1; Matragos Decl. Ex. A
8    at 1-3.)

9        It's clear to the Court that Konopski was under no legal
10   obligation to consent to the assignment of her non-competition
11   agreement to Elwood and, as previously discussed, SOS Staffing had
12   no right to unilaterally assign the non-competition agreement in
13   the absence of a provision expressly permitting it to do so.  Faced
14   with the reality that it needed to obtain Konopski's consent, it
15   appears that Elwood essentially presented Konopski with the option
16   of consenting to the assignment of her non-competition agreement,
17   or potentially risk being fired.

18       "Used in a purely legal context, 'consent' is defined as
19   'capable, deliberate, and voluntary assent or agreement to, or
20   concurrence in, some act or purpose, implying physical and mental
21   power and free action.'" *State v. Harrell*, 353 Or. 247, 256 (2013)
22   (citation omitted).  Based on the circumstances described above,
23   the Court is compelled to conclude that Elwood failed to obtain
24   adequate consent from Konopski in this case.  Had Elwood requested
25   that Konopski execute an assignment without suggesting that her job
26   could be impacted by the decision and not demanded a decision very
27   quickly over Christmas, perhaps this case would be different.
28

Page 12 - OPINION AND ORDER

Accordingly, the Court concludes any purported noncompetition agreement between Elwood and Konopski is unenforceable.[5]

### IV. CONCLUSION

For the reasons stated, Elwood's motion (Docket No. 7) for a temporary restraining order and order to show cause why a preliminary injunction should not issue is DENIED.

IT IS SO ORDERED.

Dated this __15th__ day of December, 2014.

/s/ Dennis J. Hubel
_____
                    DENNIS J. HUBEL
                    United States Magistrate Judge

---

[5] The Court's central holding has been fashioned in a way to accommodate Elwood and Konopski's joint request for the Court to determine whether the noncompetition agreement is valid and enforceable. Setting that request aside for a moment, the facts of this case fall well short of the showing necessary to grant a temporary restraining order which is an "extraordinary and drastic remed[y] that may only be awarded upon a clear showing that the moving party is entitled to relief." *Velasco v. Homewide Lending Corp.*, No. 13-cv-698, 2013 WL 3188854, at *6 n.2 (C.D. Cal. June 21, 2013). Indeed, the circumstances surrounding Elwood's attempt to obtain Konopski's consent (a necessary prerequisite to enforceability given the absence of an assignment clause in the underlying noncompetition agreement) negates the possibility that Elwood has made "a clear showing" that it is entitled to relief. They would similarly preclude the grant of a motion for summary judgment in Elwood's favor on the issue of enforceability.

Page 13 - OPINION AND ORDER